IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER LEE WILLIAMS, | § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:07-CV-0295-G |
| | § | ECF |
| MICHAEL JAMES ASTRUE, Commissioner, Social Security Administration, | § § § § | |
| Defendant. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to the District Court's Order (doc. 54), this case has been referred to the United States Magistrate Judge to act as special master under FED. R. CIV. P. 53. In accordance with this Order, the Court held a bench trial commencing on January 8, 2008. Plaintiff Christopher Lee Williams ("Judge Williams") alleges that Defendant Michael James Astrue, Commissioner of the Social Security Administration ("Commission") violated the Rehabilitation Act of 1973, 29 U.S.C. § 791 by failing to provide Judge Williams with a reasonable accommodation for his disabilities. Judge Williams had filed an accommodation request form with the Commission seeking four ergonomic chairs, a printer for his office, two flat screen computer monitors, and limited driving at his discretion. During the pendency of the lawsuit, Judge Williams received his requested printer, and it is no longer in issue.

In addition to seeking these accommodations for his disability, Judge Williams also asks the Court for the following relief: (1) a written commitment that the Commission will follow the Equal Employment Opportunity Commission ("EEOC") Guidelines; (2) that the court modify the

1

language set forth in Section 10.01.17(B)(1) of the Social Security's Administrative Instruction Manual System ("AIMS"); (3) national posting of the amended version of AMIS Section 19.01.17(B)(1); and (4) mandatory national yearly training for all Commission employees regarding the reasonable accommodation's provision, with national monitoring for five years. During the trial, Judge Williams failed to provide sufficient evidence that such additional relief was warranted during his case in chief. Therefore, this Court recommends to the District Court that a directed verdict be granted as to the requested relief listed above.

Accordingly, the only requested relief that remains is the accommodations for Judge Williams disabilities and approximately four thousand dollars for his costs. As to the remaining requested relief, after considering all the evidence and arguments, the Court recommends the following findings of fact and conclusions of law.

## FINDINGS OF FACT

### I.

Judge Williams is an Administrative Law Judge ("ALJ") for the Commission. He is sixty-five years old and has multiple physical impairments. These impairments include the following long term conditions: (1) a back impairment, which limits his abilities to sit, stand, walk, and work, (2) peripheral neuropathy of the lower extremities, which limits his ability to stand, walk, drive, and work, and (3) vision fluctuations, which are cause by diabetes, past surgery, and Judge Williams' medications. The vision fluctuations limit his visual acuity, his ability to drive, and his ability to work. These impairments result from Judge Williams' military service in Vietnam as an infantry platoon leader in the Army. The Department of Veterans Affairs has given Judge Williams an eighty percent disability rating for a total of eight service-connected impairments.

2

Judge Williams credibly testified that he is limited to sedentary work with a sit/stand option, and that he is limited to no more than one hour of continuous standing or walking due to pain and numbness in his lower extremities. Moreover, his walking is limited to level terrain, and he has intermittent visual fluctuations that limit his ability to use a computer monitor. Additionally, his balance is occasionally impaired, and he experiences significant pain and numbness in his lower extremities if he drives more than fifty miles without getting out and walking around. This numbness in his legs can increase to the point where it is hard for him to distinguish the brake from the accelerator. Judge Williams, however, has testified that he does not presently need driving restrictions, but stated that he will in the future because his condition will deteriorate.

## II.

There are two different types of accommodation requests: a threshold request and a previous accommodation request. When considering a threshold request, Randi Lappin ("Lappin"), a Supervising Reviewing Officer for the Commission, reviews the request and makes an initial suggestion of whether it should be granted, denied, or if more information is needed. When there has been a previous accommodation, Lappin reviews the request to explore whether the condition has improved or worsened. Judge Williams' accommodation request was a threshold request. While Judge Williams asserts that he was previously provided two ergonomic chairs in 1988 by Associate Commissioner Eileen Bradley, the Commission has no record of any such accommodation. Moreover, Virginia McGhee ("McGhee"), a Management Analyst for the Commission and assistant to Lappin, asked Judge Williams to provide documentation of the previous accommodation. Judge Williams, however, did not provide any documentation. Accordingly, the Court finds that the Commission properly treated Judge Williams' entire June 2, 2006 reasonable accommodation

request as a threshold request.

In addition to not having notice of any prior accommodation, the Commission was also unaware that Judge Williams had any physical impairments. There were no visibly noticeable problems, like a cast, cane, or wheel chair. The Court finds that without knowledge of either the previous accommodation or physical impairments, the Commission was not put on notice of any medical impairments suffered by Judge Williams until he filed the reasonable accommodation request form on June 2, 2006.

## III.

In his June 2, 2006 request for reasonable accommodation, Judge Williams requested "4 orthopedic chairs (2 for my office, 1 for my work table, and 1 for my hearing room when doing hearings in Dallas)," a "Dell 1710 Printer (non-network) for my office," a "20 inch flat screen when a single flat screen is assigned to me and [two] 20 inch flat screens when I am assigned e-Dib files for processing," and "limited driving at my discretion." (*See* Pl.'s Am. Compl. Ex. 8 at 3.) In support of his request, Judge Williams attached a letter from Dr. Paul A. Greenberg, dated May 5, 2000. (*Id.* at 6.) The full text of the letter states:

> Judge Williams has been my patient for many years. He has orthopedic problems with his back secondary to military service, a herniated disc in 1981 and disc degeneration with aging. It is my recommendation that Judge Williams is provided with ergonomic orthopedic chairs for his office and hearing room which will relieve stress on his back due to prolonged sitting. He also has peripheral neuropathy in his lower extremities secondary to his diabetes, and therefore, should not engage in more than minimal walking or standing and should be permitted to limit his driving as he feels appropriate because of pain, numbness and tingling in his feet.

(*Id.*)

After Judge Williams filed his reasonable accommodation request form, Judge Don Harper ("Judge Harper"), the North Dallas Hearing Office Chief Administrative Law Judge, submitted a

memorandum, dated June 13, 2006, to Judge Joan Parks Saunders ("Judge Parks Saunders"), the Regional Chief Administrative Law Judge, that supported Judge Williams' request for multiple chairs for his multiple work areas. On June 16, 2006, Judge Donald J. Willy ("Judge Willy"), who is the regional vice president for Judge Williams' union, called Judge Parks Saunders to discuss, among other things, Judge Williams' request for four ergonomic chairs. During this conversation Judge Parks Saunders asked if Judge Williams would be willing to accept two ergonomic chairs instead of the four he requested. After the conversation, Judge Willy called Judge Williams and informed him of Judge Parks Saunders' offer. That same day Judge Williams e-mailed Judge Parks Saunders and told her he was willing to accept two ergonomic chairs.

Unaware at the time of Judge Parks Saunders' discussions, Lappin reviewed Judge Williams' accommodation request form and the letter from his physician. Lappin decided that the Commission needed more medical information before it could proceed with his request. Lappin sent Judge Williams a letter, dated June 20, 2006, requesting additional medical documentation. This letter informed Judge Williams that he has not provided acceptable medical documentation, and therefore, the Commission could not make a determination on his request. The letter instructed Judge Williams to explain his duties as an ALJ to his doctor and ask the doctor to provide (1) a history of the medical condition; (2) a clinical finding from the most recent medical examination, including any test conducted; (3) a diagnosis, including the current clinical status; (4) a prognosis, including the beneficial and negative effects of medication Judge Williams is taking; (5) an explanation of the impact of the medical impairments on overall activities, both on and off the job; (6) a clear and specific description of any restrictions or accommodations that are required and the reason they are required, as well as an explanation of their medical benefit; and (7) an explanation how not

5

providing the accommodation would worsen the problem and how providing the accommodation would alleviate the problem. The letter concluded that no action would be taken to approve or deny the request until the medical information had been submitted.

Attached to this letter was an ergonomic chair request form. This form asked that Judge Williams and his physician provide further information about which chair features Judge Williams requires. For example, the request form asks if he needs height adjustable lumbar support, adjustable arm rests, energy absorbing cushion, and adjustable back rest height. The form also asks for specific measurements regarding pan height, seat depth, and seat width. The Commission needs this information so it can provide Judge Williams with a chair that will accommodate his impairments. The form also enables the Commission to determine if it has the type of ergonomic chair needed in its inventory. Judge Williams never filled out this form, and never provided the information requested by the June 20, 2006 letter.

Judge Williams believed that this letter was an unreasonable request. He believed responding to the letter would require undue burden, great expense, and violated his privacy by asking for information unrelated to his impairments. On June 23, 2006, Judge Williams e-mailed Judge Willy saying that the June 20, 2006 letter was "a truly burdensome and unnecessary request for additional medical information." (Def.'s Answer Compl. at ¶ 48.) While Judge Williams copied Judge Parks Saunders and Lappin on the e-mail, it was not viewed as an objection or an invitation to engage in discussions because it was not address specifically to them.

On June 30, 2006, McGhee called Judge Williams. While she has no authority to decide claims, McGhee does help collect information and organize request files. During her conversation with Judge Williams, McGhee told him that the Commission needed more medical documentation

6

in order to proceed with his request. Judge Williams objected to providing the information requested in the June 20, 2006 letter because he felt it was unreasonable. McGhee informed him that it was the standard letter sent to employees who did not provide sufficient medical documentation to support their accommodation request.

While the June 20, 2006 letter may have been a standard letter in substance, it was customized to Judge Williams' request. Judge Williams points to the seven pieces of information the letter requests and states that those requests exceeds the scope of his initial request. However, in reading the letter as a whole it clearly refers to Judge Williams' specific request, and instructs him to explain his duties as an ALJ to his doctor and have his doctor provide specific information about his impairments as they relate to his duties. The requested information serves the reasonable purpose of helping the Commission decide (1) if he is a qualified individual with a disability, (2) if the accommodation requested is likely to assist the employee in performing the essential functions of his position, and (3) if the accommodation request is reasonable. The Court does not find this letter to be unreasonable. Moreover, the Court finds that the letter serves as an attempt by the Commission to engage in the communication process.

This, however, was not the Commission's only attempt to engage Judge Williams in a dialog regarding his accommodation request. McGhee called Judge Williams after the June 20, 2006 letter was sent and orally informed him that the Commission needed more medical information before it could proceed with his request. Lappin also called and spoke with Judge Williams about his request. Judge Williams was upset and informed Lappin that the requested information was unreasonable and placed a great burden on him. During this conversation, Lappin explained that the Commission did not need everything that was requested in the letter, but that it needed more medical documentation

7

to make sure he was a qualified individual and to make sure that his impairments were properly accommodated. Judge Williams stated that he had already provided enough information and was not going to give anything else.

After this phone conversation, Lappin sent Judge Williams another letter, dated July 14, 2006. While the Commission does not normally write a second letter, Lappin wanted to clarify the Commission's position because she believed Judge Williams did not understand it during their phone conversation. She also wanted Judge Williams to know that the Commission was still engaged in the communication process and trying to resolve his claim. In this letter, Lappin again indicated that the Commission did not have any documentation of prior approval for ergonomic chairs, but referred Judge Williams to the request for ergonomic chair form attached to the previous letter and asked that he indicate the necessary specifications for the chairs. Lappin also acknowledged Judge Williams' acceptance of Judge Parks Saunders' offer of two chairs, instead of the four initially requested. Lappin also states that Judge Williams has previously been accommodated with a twenty inch video display terminal. She indicated that when that monitor is replaced with a flat screen, he would received the same size monitor. Accordingly, his request for a twenty inch flat screen monitor whenever flat screen monitors replaced the existing monitors had been resolved. Moreover, Judge Williams' request for ergonomic chairs would have been resolved as soon as he completed the ergonomic chair request form.

As to the remaining requests, Lappin states that the medical documentation provided with Judge Williams' initial request does not sufficiently demonstrate his medical impairments or how they affect his ability to perform his job. The letter goes on to state that responses to some or all of the factors set forth in the June 20, 2006 letter are needed to proceed in assessing Judge Williams'

8

request. Judge Williams did not respond to the July 14, 2006 letter. He decided to not even complete the ergonomic chair form, which would have allowed him to receive two chairs. Judge Williams ignored this letter because he did not feel he was dealing with reasonable people.

The employees of the Commission made several attempts, through phone calls and letters, to obtain sufficient medical documentation that would allow them to make a decision on Judge Williams' accommodation request. He rejected these attempts. Judge Williams contends that Judge Parks Saunders should have personally called him regarding his claim. The Court finds that such a phone call was not only unnecessary, but also that it would have been a less effective means of resolving the claim.

Judge Williams and Judge Park Saunders have had previous disagreements, which resulted in Judge Williams no longer speaking to Judge Parks Saunders. In 2005, Judge Parks Saunders decided to transfer a portion of pending Dallas cases to other divisions to ease the backlog. Judge Williams disagreed with this decision. At a meeting Judge Parks Saunders had with the other judges, Judge Williams informed her that she could only talk to him and not to the other judges. As a result of this dispute, the relationships between Judge Parks Saunders and Judge Williams has been strained. Judge Parks Saunders tried to continue a cordial relationship with Judge Williams, but when she would say hello to him in the hallway, he ignored her. Given the recent history between Judge Parks Saunders and Judge Williams, a phone call from her to him about his accommodation request would not likely have resolved the situation. Moreover, because of the large number of accommodation requests received, it is not practical for Judge Parks Saunders to call each person. Therefore, in an effort to treat everyone equally, Judge Parks Saunders' practice not to call those who make an accommodation request is reasonable. Accordingly, her failure to call Judge

Williams personally was not the cause of the communication breakdown.

Judge Williams never attempted to provide the Commission with any medical documentation supporting his claim beyond his initial June 2, 2006 request. The Commission tried to obtain this information through phone calls and letters. Judge Williams either resisted or ignored the Commission's communications. Even if the Commission's June 20, 2006 letter was unreasonable, the Commission attempted to clarify what information it needed through additional communications. The Court finds Judge Williams failed to show that the Commission was responsible for the communication breakdown.

## III.
## CONCLUSIONS OF LAW

The District Court has jurisdiction pursuant to the Rehabilitation Act, 29 U.S.C. § 791. To succeed on a claim under the Rehabilitation Act "a plaintiff must show that: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability." *E.E.O.C. v. Sears Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005). While Judge Williams is a qualified individual with a disability and the Commissioner became aware of that disability when Judge Williams filed his reasonable accommodation form, Judge Williams has failed to show that the Commissioner refused to make an accommodation. This third element requires that the employer and employee engage in an interactive process to determine a reasonable accommodation. "If the disabled employee shows that her disability was not reasonably accommodated, the employer will be liable under Americans with Disabilities Act (ADA) only if it bears responsibility for the breakdown of the interactive process." *Id.* To determine which side is responsible for the breakdown, "courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help

the other party determine what specific accommodations are necessary." *Id.* at 805. Moreover, "a party that obstructs or delays the interactive process . . . [or] a party that fails to communicate, by way of initiation or response, may be . . . acting in bad faith." *Id.*

This crux of Judge Williams' argument is that he initiated the informal communication process with his June 2, 2006 accommodation request and was met with the Commission's June 20, 2006 letter, which was an unreasonable and invasive request for more information. According to Judge Williams, when the Commission made this unreasonable request, it was responsible for breaking down the communication process. The evidence does not support this theory, and Judge Williams has not met his burden of proof.

Judge Williams did not provide sufficient medical documentation with his initial accommodation request on June 2, 2006. The letter from Dr. Greenberg does not contain the current medical conditions, the long term prognosis for the conditions, the degree to which the conditions respond to treatment, the extent to which Judge Williams' treatments interfere with his ability to work, or whether specific medical tests were performed to determine medical conditions or limitations. Moreover, Dr. Greenberg's letter does not indicate the necessary specifications for the ergonomic chairs or the amount of time or distance Judge Williams could safely drive. While the Court agrees that this request initiated the communication process between Judge Williams and the Commission, the information provide in his request and Dr. Greenberg's letter alone did not warrant the immediate approval of his accommodation request.

Before the Commission can decide if it should grant an accommodation request, it must determine if Judge Williams is a qualified individual with a disability, if the accommodation request would assist Judge Williams in performing his duties as an ALJ, and if the accommodation request

is reasonable. While the evidence currently before the Court does in fact support Judge Williams' claim that he is a qualified individual with a disability, that evidence was not before the Commission. The only evidence presented to the Commission was Judge Williams' request form and the letter from Dr. Greenberg. As a result, it was reasonable for the Commission to request further information from Judge Williams.

When the Commission attempted to obtain further medical information from Judge Williams, he refused. For example, while Judge Williams accepted Judge Parks Saunders offer of two ergonomic chairs, he chose to not complete the ergonomic chair request form, which would have allowed the Commission to provide him with a chair that meets his needs. When Judge Williams declined to provide any information in response to the June 20, 2006 letter, the Commission continued reaching out to Judge Williams through phone calls and another letter. During a phone conversation, Lappin explained that the Commission did not need every single piece of information requested in the June 20, 2006 letter, but explained to him that more medical information was needed before his claim could be approved. When Judge Williams informed her that he would not provide any further information, Lappin sent him a second letter to try to keep the communication lines open and to clarify the Commission's position. Once Judge Williams received this letter, he decided that the employees working on his request claim were unreasonable people. As a result of this deduction, he refused to answer the letter or provide any of the requested information.

In determining who was responsible for the breakdown of the communication process the Court looks to see if one side failed to make reasonable efforts to help the other side determine what specific accommodations are required. *Sears Roebuck*, 417 F.3d at 805. Beyond his initial request, Judge Williams made no effort to help the Commission determine what accommodations were

necessary. Judge Williams' only response to attempts by the Commission to obtain information was to state that the Commission's attempts were unreasonable and that he refused to provide further information. Despite this response the Commission tried to clarify what information was needed and to continue the dialog. Judge Williams failed to provide any response to this communication. In failing to respond, Judge Williams obstructed the interactive process. Judge Williams argues that if he had provided the Commission with more medical documentation, the Commission would have continued to request more. He claims that this would have wasted time and money. This is mere speculation of Judge Williams' part. Judge Williams had an obligation to make reasonable efforts to assist the Commission by providing sufficient medical documentation so it could determine what accommodations were necessary. As a result, the Court finds that Judge Williams failed to participate in good faith in the communication process. Accordingly, he failed to prove the third element necessary to succeed on a Rehabilitation Act claim; that the employer failed to reasonably accommodate the disability.

## RECOMMENDATION

Judge Williams' June 2, 2006 accommodation request form did not provide medical information sufficient to allow the Commission to approve the request. The Commission made several attempts to obtain the necessary information, but these attempts were either rejected or ignored. Judge Williams failed to show that the Commission was responsible for the breakdown in the communication process, and thus, failed to show the Commission did not accommodate his disability. Accordingly, this Court recommends to the District Court that Judge Williams take nothing by way of his claims and that judgment be awarded to the Commission.

Signed, February 20, 2008.

                                              _____
                                              PAUL D. STICKNEY
                                              UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).